[Cite as *Abrams v. Grenny Properties, L.L.C.*, 2016-Ohio-8303.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104452**

# PHILLIP ABRAMS

PLAINTIFF-APPELLEE

vs.

# GRENNY PROPERTIES, L.L.C.

DEFENDANT-APPELLANT

## JUDGMENT:
### REVERSED AND REMANDED

Civil Appeal from the
Garfield Heights Municipal Court
Case No. CVI 1503200

**BEFORE:** E.T. Gallagher, J., McCormack, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** December 22, 2016

**ATTORNEY FOR APPELLANT**

Robert N. Pelunis
P.O. Box 39242
Solon, Ohio 44139


**FOR APPELLEE**

Phillip Abrams, pro se
2988 S. Moreland
Shaker Heights, Ohio 44120

EILEEN T. GALLAGHER, J.:

**{¶1}** This cause came to be heard on the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1. Defendant-appellant, Grenny Properties, L.L.C. ("Grenny"), appeals a judgment rendered in favor of plaintiff-appellee, Phillip Abrams ("Abrams"), in the amount of $345. Grenny raises two assignments of error:

> 1. The trial court did not properly interpret the lease agreement entered into and agreed to by the parties.
>
> 2. The trial court improperly awarded judgment in favor of appellee and against appellant, against the manifest weight of the evidence, and said judgment was not correct given the findings of fact in the court's judgment entry.

**{¶2}** We find merit to the appeal and reverse.

## I. Facts and Procedural History

**{¶3}** Grenny is a property management company that leases residential properties to tenants throughout the greater Cleveland area. On August 31, 2015, Abrams signed a lease for property located in Garfield Heights, Ohio. The preprinted terms of the lease required Abrams to pay a security deposit in the amount of $895 and rent in the amount of $945 per month. Paragraph 11 of the lease agreement provides, in relevant part:

> You agree to furnish the following utilities[,] which are in our exclusive control ad [sic] are supplied by public utility[,] which you agree to have placed in your name once you take possession and occupancy or once the lease becomes effective which ever comes first: water/sewer, electric, gas, phone, cable, and/or any necessary utilities for home function.

A "Utility Addendum" to the lease provides that "[s]hould Tenant(s) choose to leave billing for water and sewer services remaining in Landlord(s)'s name[,] a utility deposit of $600.00 (Six Hundred Dollars) will be required to be made with the Landlord(s)."

{¶4} According to Abrams's complaint, Abrams gave Grenny a cash payment totaling $1,780 on August 31, 2015. The payment represented a security deposit of $850 and a partial first month rent payment of $930. According to the uncontroverted statements in Grenny's brief, Grenny never delivered possession of the property to Abrams because Abrams failed to pay the full amount of the security deposit and first month's rent.

{¶5} Abrams filed a pro se complaint in the Garfield Municipal Court, requesting the return of his $1,780 cash payment because Grenny never delivered possession of the leased property. Grenny filed an answer and counterclaim, seeking a judgment against Abrams in the amount of $12,500, plus attorney fees and court costs.

{¶6} Based on the evidence presented at a bench trial, the trial court found in favor of Grenny on its counterclaim in the amount of $1,335. The court also found that Abrams was entitled to judgment against Grenny in the amount of $345, which the court determined represented "the difference between the amount of $1,780 he paid in cost less the damages owing to the defendant." Grenny now appeals the trial court's judgment.

## II. Law and Analysis

{¶7} In the first assignment of error, Grenny argues the trial court erroneously misinterpreted the terms of the parties' lease agreement.

**{¶8}** The interpretation of a contract is a question of law subject to de novo review. *Continental W. Condo. Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). We, therefore, interpret the terms of the parties' lease de novo.

**{¶9}** Leases are contracts subject to the traditional rules of contract interpretation. *DDR Rio Hondo, L.L.C. v. Sunglass Hut Trading, L.L.C.*, 8th Dist. Cuyahoga No. 98986, 2013-Ohio-1800, ¶ 13. A contract that is clear and unambiguous requires no real interpretation or construction and will be given the effect called for by the plain language of the contract. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55, 544 N.E.2d 920 (1989).

**{¶10}** The parties' lease agreement consists of a document titled "Residential Rental Agreement" and a separate untitled document that provided additional terms. For purposes of discussion, we shall refer to this untitled document as the "security agreement." As relevant here, the security agreement states:

> Should failure of remaining balance(s) by due date and/or breach of the lease agreement occurs, lessee hereby acknowledges and understands, and agrees this is a non-refundable deposit and shall be forfeited and enforcement of lease remains in effect.
>
> No possession to the property will be given until cleared funds are received in full.

**{¶11}** It is undisputed that Abrams paid less than the full amounts of the security deposit and the first month's rent as provided in the preprinted "Residential Rental Agreement." However, handwritten notes on the security agreement indicate that

Abrams paid $1,780 in cash and Grenny accepted it at the time the parties executed the agreement on August 31, 2015. The handwritten notes indicate Grenny accepted that Abrams owed a balance of $25 and a $600 utility deposit since he had not placed all the utilities in his name. Thus, the handwritten notations created new terms that were not contained in the preprinted documents.

{¶12} To be enforceable, a contract must have "an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16.

{¶13} An acceptance that changes the terms of the contract does not create a binding contract because it constitutes a counteroffer. *Foster v. Ohio State Univ.*, 41 Ohio App.3d 86, 88, 534 N.E.2d 1220 (10th Dist.1987), citing 1 Restatement of the Law 2d, Contracts, Section 59, at 145 (1981). If the counteroffer is accepted, a new contract is formed based on the terms of the counteroffer as opposed to the terms of the original offer. *See, e.g., BR Kettering Towne Ctr. L.L.C. v. Golden City Ballroom L.L.C.*, 2d Dist. Montgomery No. 26718, 2016-Ohio-5159.

{¶14} The fact that Grenny accepted the reduced amount of the rent and security deposit at the time the parties executed the lease indicates it agreed, at the very least, to allow Abrams to move into the residence even though he had not paid the full amount of the security deposit set forth in the preprinted lease. There was no agreement before August 31, 2015, when Abrams tendered the $1,780 in cash and newly negotiated terms

were handwritten on the security agreement. Thus, the record shows that Abrams's tender, in cash, of $1,780 constituted a counteroffer, which Grenny accepted when it took Abrams's cash and noted that he owed a balance of $25 plus a utility deposit of $600.

{¶15} According to the uncontroverted statements in Grenny's appellate brief, Grenny did not deliver possession of the residence to Abrams "due to [Abrams's] not paying the full amount of the security deposit and not transferring utilities pursuant to the terms of the lease agreement." (Appellant's brief at 4.) However, by accepting Abrams's tender of $1,780 as security deposit and first month's rent, the parties modified the terms of the original lease, and Grenny was obliged to deliver possession of the leased premises. It should not have accepted Abrams's cash tender if it had no intention of delivering possession of the premises to him.

{¶16} Furthermore, the security agreement provides that Abrams's security deposit was only nonrefundable if he failed to make timely rent payments or otherwise breached the lease. Abrams could not have breached the lease because he never took possession of the premises, and he provided an acceptable payment of rent and security deposit at the time the lease agreement was executed. Grenny, however, breached the parties' agreement by failing to deliver possession of the leased premises after accepting Abrams's cash payment of the security deposit and first month's rent. Therefore, Abrams is entitled to a complete refund of the $1,780 that he paid to Grenny for the security deposit and first month's rent.

**{¶17}** Accordingly, we reverse the trial court's judgment and remand the case to the trial court to enter judgment in favor of Abrams in the amount of $1,780.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Garfield Heights Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

TIM McCORMACK, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR