[Cite as *Pantages v. Becker*, 2018-Ohio-3170.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106407**

---

**PAMELA PANTAGES**

PLAINTIFF-APPELLEE

vs.

**MICHAEL F. BECKER, ET AL.**

DEFENDANTS-APPELLANTS

---

**JUDGMENT:**
AFFIRMED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-17-884505

**BEFORE:** S. Gallagher, J., E.A. Gallagher, A.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** August 9, 2018

**ATTORNEY FOR APPELLANTS**

Richard C. Haber
Haber, Polk & Kabat, L.L.P.
1300 W. 78th Street, Suite 305
Cleveland, Ohio   44102


**ATTORNEYS FOR APPELLEE**

Matthew D. Besser
Cathleen M. Bolek
Bolek, Besser, Glesius, L.L.C.
5885 Landerbrook Drive, Suite 302
Cleveland, Ohio   44124

SEAN C. GALLAGHER, J.:

**{¶1}** Defendants-appellants Michael F. Becker ("Becker") and the Becker Law Firm, L.P.A., appeal the decision of the trial court that denied their motion to compel arbitration pursuant to R.C. 2711.03, to stay proceedings pursuant to R.C. 2711.02, and/or for an order of dismissal. Upon review, we affirm the decision of the trial court and remand for further proceedings.

**{¶2}** Plaintiff-appellee Pamela Pantages is an attorney who had been employed by the Becker Law Firm and worked for Becker for 11 years, from January 2006 until February 2017. Relative hereto, on April 9, 2008, Pantages entered into an employment agreement with Becker & Mishkind Co. L.P.A.,which corporation's name was changed to the Becker Law Firm, L.P.A. The employment agreement automatically renewed on a year-to-year basis until terminated in accordance with Section 7 of the employment agreement. Section 9 of the employment agreement, titled "Division of Attorney Fees After Termination," contains an arbitration clause that is at issue herein.

**{¶3}** Pantages resigned from the Becker Law Firm allegedly after being told by Michael Becker that she would not be made a partner, despite prior assurances, and allegedly after a younger male attorney was promoted to partner over her. On August 15, 2017, Pantages filed an employment discrimination case against appellants.[1] The complaint set forth eight counts, including age discrimination, sex discrimination, aiding and abetting discrimination, breach of contract, promissory estoppel, breach of fiduciary duty/duty of loyalty, declaratory judgment, and accounting.

---

[1] The record reflects that prior to filing her complaint, Pantages entered into a "Tolling Agreement" with Becker and the Becker Law Firm, whereby the parties agreed to toll any applicable statute of limitations to Pantages's claims.

{¶4} Appellants filed a motion to transfer venue that included an "alternative motion to compel arbitration pursuant to O.R.C. 2711.03, to stay proceedings pursuant to O.R.C. 2711.02 and/or for order of dismissal." The trial court issued a journal entry that denied the motion to transfer venue. Appellants filed a notice of appeal from that order, indicating some uncertainty with the trial court's ruling. This court issued a limited remand for the trial court to clarify its ruling on the motion to compel arbitration. Upon the limited remand, the trial court clarified its ruling and denied the defendants' alternative motion to compel arbitration, to stay proceedings and/or for order of dismissal.

{¶5} While the case was pending on the limited remand, the trial court granted Pantages leave to file an amended complaint. We find no merit to Pantages's claim that this renders the current appeal moot. The case was remanded for the limited purpose of allowing the trial court to clarify its ruling on the motion to compel arbitration. The trial court had no jurisdiction to entertain Pantages's motion for leave to amend the complaint.

{¶6} Appellants' sole assignment of error on appeal is that the trial court erred by denying their motion to compel arbitration and motion to stay proceedings. The central issue before us is whether the parties agreed to submit this dispute to arbitration. The merits of the claims are not before us.

{¶7} We apply a de novo standard of review to determine whether a controversy is arbitrable under an arbitration provision of a contract. *Arbor Grove Properties v. Clear Sky Realty, Inc.*, 5th Dist. Stark No. 2017 CA 00124, 2018-Ohio-1467, ¶ 17. Although there is a presumption in Ohio favoring arbitration, parties cannot be compelled to arbitrate a dispute they have not agreed to submit to arbitration. *Natale v. Frantz Ward, L.L.P.*, 8th Dist. Cuyahoga No. 106299, 2018-Ohio-1412, ¶ 9.

**{¶8}** The Supreme Court of Ohio consistently has held as follows:

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." * * *  This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration.'" *Council of Smaller Ents. v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 665, 1998 Ohio 172, 687 N.E.2d 1352, quoting *AT&T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 648-649, 106 S.Ct. 1415, 89 L.Ed.2d 648, quoting *United Steel Workers of Am. v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409. Accordingly, when deciding motions to compel arbitration, the proper focus is whether the parties actually agreed to arbitrate the issue, i.e., the scope of the arbitration clause, not the general policies of the arbitration statutes. [*Equal Emp. Opportunity Comm. v. Waffle House* (2002), 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755.]  It follows that although any ambiguities in the language of a contract containing an arbitration provision should be resolved in favor of arbitration, the courts must not "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Id.*

*Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 20.

**{¶9}** The question of whether a controversy is arbitrable under the provisions of a contract is a question for a court to decide upon examination of the contract. *Gibbons-Grable Co. v. Gilbane Bldg. Co.*, 34 Ohio App.3d 170, 171, 517 N.E.2d 559 (8th Dist.1986). "When

confronted with an issue of contract interpretation, the role of the court is to give effect to the intent of the parties to that agreement. The court examines the contract as a whole and presumes that the intent of the parties is reflected in the language used in the agreement." *Martin Marietta Magnesia Specialties, L.L.C. v. PUC of Ohio*, 129 Ohio St.3d 485, 2011-Ohio-4189, 954 N.E.2d 104, ¶ 22, citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. Further, "[i]n interpreting a provision in a written contract, the words used should be read in context and given their usual and ordinary meaning." *Carroll Weir Funeral Home v. Miller*, 2 Ohio St.2d 189, 192, 207 N.E.2d 747 (1965).

{¶10} Here, the employment agreement contains 19 sections that are separately titled as follows: "1. Employment of Lawyer," "2. Term of Agreement," "3. Activities of Lawyer," "4. Compensation," "5. Other Benefits," "6. Reimbursement of Expenses, Etc.," "7. Termination of Agreement," "8. Payment Required Upon Termination of Agreement," "9. Division of Attorney Fees After Termination," "10. Governing Law; Severability," "11. Entire Agreement; Amendment; Retroactivity," "12. Nonassignability," "13. Binding Effect," "14. Designation of Beneficiary," "15. Nondisclosure of Confidential Information; Nonsolicitation of Corporation's Clients," "16. Pronouns," "17. Number," "18. Execution of Counterparts," and "19. Notice."

{¶11} The arbitration clause falls under a subdivision to Section 9 of the employment agreement. No other section of the contract refers to arbitration. Further, where subsections are contained in other sections of the contract, such as Section 4 (Compensation) and Section 7 (Termination of Agreement), the subsections all relate to the titled topics for the respective sections.

**{¶12}** Section 9, which is titled "Division of Attorney Fees After Termination," pertains to the division of attorney fees in the event a client of the Becker Law Firm elected to continue to be represented by Pantages on a case following termination of the employment agreement.

**{¶13}** Section 9.1 states the parties agreement that "all clients represented by [Pantages] are clients of [the Becker Law Firm]" and that if a client of the Becker Law Firm elected to continue to be represented by Pantages after termination of the employment agreement, then "the parties shall comply with the Rules of Professional Conduct in the State of Ohio and applicable case law relative to the division of attorney fees on those cases."

**{¶14}** Section 9.2 states that in such an event that a client elected to continue to be represented by Pantages, the Becker Law Firm would be entitled to receive a percentage of the net attorney fee recovered in the case.

**{¶15}** Section 9.3 states that Pantages and the Becker Law Firm "shall make every reasonable effort to reach an Agreement as to the distribution of attorney fees with respect to any client that elects to continue to be represented by [Pantages]."

**{¶16}** Section 9.4 contains the only arbitration clause in the employment agreement and states as follows:

> 9.4 In the event that Lawyer and Corporation are unable to resolve any disputes that may arise at the time of or subsequent to termination of this Agreement, including but not limited to any disputes relative to the interpretation of this Agreement and allocation and division of attorney fees, the parties agree to submit all such controversies to binding arbitration in accordance with the Rules of Professional Conduct and any other requirements as mandated by the Ohio Supreme Court for resolution of disputes between attorneys.

**{¶17}** Appellants argue that the arbitration provision is broad in scope and requires the arbitration of "any disputes that may arise at the time of or subsequent to termination of the this Agreement[.]" Initially, we observe that the issue of when the dispute arose was not raised in the trial court and is not before us on appeal. Although Pantages states that she was told she would not be made partner on or about December 28, 2016, when she met with Becker in his office, arguably the dispute arose upon the termination of the employment agreement. We make no determination herein.

**{¶18}** Appellants assert that because Pantages's claims cannot be maintained without reference to the employment agreement, that all of the claims are subject to arbitration, including the claims of discrimination. In support of their argument, appellants rely upon cases in which broadly worded arbitration clauses in an employment agreement were enforced. *See Natale*, 8th Dist. Cuyahoga No. 106299, 2018-Ohio-1412; *Zilbert v. Proficio Mtge. Ventures, L.L.C.*, 8th Dist. Cuyahoga No. 100299, 2014-Ohio-1838; *Mak v. Silberman*, 8th Dist. Cuyahoga No. 95590, 2011-Ohio-854; *Short v. Resource Title Agency, Inc.*, 8th Dist. Cuyahoga No. 95839, 2011-Ohio-1577; *Gaffney v. Powell*, 107 Ohio App.3d 315, 668 N.E.2d 951 (1st Dist.1995); *Stromberg v. Ltd. Brands, Inc.*, 10th Dist. Franklin No. 09AP-702, 2010-Ohio-1994. However, it is apparent from most of those decisions that the arbitration clauses more generally appeared, and none reflect that they involved a similarly worded clause placed under a subsection of a separately titled section pertaining to a certain aspect of the employment agreement.

**{¶19}** Pantages claims that the arbitration provision at issue is unenforceable because it lacks specific details concerning the arbitration process. However, none of the cases upon which she relies support such a determination in this case. *See, e.g.*, *Harrison v. Toyota Motor*

*Sales, U.S.A. Inc.*, 9th Dist. Summit No. 20815, 2002 Ohio App. LEXIS 1582 (Apr. 10, 2002); *Brunke v. Ohio State Home Servs.*, 9th Dist. Lorain No. 06CA008947, 2007-Ohio-3119.

{¶20} Pantages also argues that when read in context, the plain language of the arbitration clause reflects that the parties agreed to arbitration only for resolving fee-sharing disputes. She states that the arbitration clause is contained at the end of a section entitled "Division of Attorney Fees After Termination," and it is preceded by three subsections relating to how the parties would handle fee-splits. Further, she states the clause includes language that "the parties agree to submit all such controversies to binding arbitration in an accordance with the Rules of Professional Conduct and any other requirements as mandated by the Ohio Supreme Court for resolution of disputes between attorneys." She maintains this relates to the type of fee dispute the parties agreed to arbitrate. We find merit to this argument.

{¶21} Pantages points to an analogous case, *Cooper v. Chateau Estate Homes*, 12th Dist. Warren No. CA2010-07-061, 2010-Ohio-5186. In *Cooper*, the court "read in context the entire section of the contract and surrounding sentences" and determined that an arbitration clause that was placed in the final paragraph of a limited warranty section of the parties' contract applied only to construction defects under the contractor's warranty. *Id*. at ¶ 15-19. The court found: "If [the defendant] wished for the arbitration clause to be applicable to the parties' entire agreement, it should have placed the clause in a conspicuous location, such as a separate paragraph or section, not buried in the section describing the 'CONTRACTOR'S WARRANTY.'" *Id*. at ¶ 19. The court proceeded to find the plaintiff's claims, which were based on a promise to secure financing, were not subject to the arbitration provision. *Id*. The court found as follows: "Due to the dubious placement of the clause, we must construe the ambiguity against [the drafter]." *Id*.

**{¶22}** Our focus herein is upon the issue of whether the parties actually agreed to arbitrate the matter that is the subject of this litigation. Upon examining the contract as a whole, we find that the clear intent of the contracting parties is reflected in the plain language used in the agreement and that the arbitration clause is limited to disputes involving the division of attorney fees for clients electing to continue with Pantages following the termination of the employment agreement. Although the clause references "any disputes * * * including but not limited to any disputes relative to the interpretation of this Agreement and allocation and division of attorney fees," the words must be interpreted in context. The placement of the arbitration clause is within the section to the agreement pertaining to the division of attorney fees, and it reflects the parties' intent "to submit all such controversies to binding arbitration in accordance with the Rules of Professional Conduct and any other requirements as mandated by the Ohio Supreme Court for resolution of disputes between attorneys." This language is consistent with Ohio Prof.Cond.R. 1.5(f), which contemplates that fee disputes between attorneys shall be referred to the bar association for mediation or arbitration, and explicitly states as follows:

> In cases of a dispute between lawyers arising under this rule, fees shall be divided in accordance with the mediation or arbitration provided by a local bar association. When a local bar association is not available or does not have procedures to resolve fee disputes between lawyers, the dispute shall be referred to the Ohio State Bar Association for mediation or arbitration.

Ohio Prof.Cond.R. 1.5(f).

**{¶23}** Because none of the claims in this matter pertain to a dispute involving the division of attorney fees after termination of the employment agreement, we find the underlying claims

are not subject to the arbitration clause.   We find no need to address any other outstanding issues that were raised.   Accordingly, appellants' assignment of error is overruled.

**{¶24}** Judgment affirmed, and case remanded.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE


MELODY J. STEWART, J., CONCURS;
EILEEN A. GALLAGHER, A.J., CONCURS IN JUDGMENT ONLY WITH SEPARATE OPINION


EILEEN A. GALLAGHER, A.J., CONCURRING IN JUDGMENT ONLY:

**{¶25}** Although I agree with the result reached by the majority, I write separately because I do not agree with the majority's reasoning in reaching that result.   Specifically, I do not agree with the majority's determination that the arbitration provision at issue should be read as being "limited to disputes involving the division of attorney fees after termination."

**{¶26}** We apply a de novo standard of review when determining whether a dispute is subject to arbitration under an arbitration provision.   *See, e.g., Ohio Plumbing, Ltd. v. Fiorilli Constr., Inc.*, 8th Dist. Cuyahoga No. 106242, 2018-Ohio-1748, ¶ 9, citing *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7-8.   Likewise, the

interpretation of an agreement is an issue of law that we review de novo. *See, e.g., Boone Coleman Constr., Inc. v. Piketon*, 145 Ohio St.3d 450, 2016-Ohio-628, 50 N.E.3d 502, ¶ 10; *Abrams v. Grenny Props., L.L.C.*, 8th Dist. Cuyahoga No. 104452, 2016-Ohio-8303, ¶ 8. Although a party cannot be required to arbitrate a dispute that the party has not agreed to submit to arbitration, in light of Ohio's "strong public policy" in favor of arbitration, an arbitration provision should not be denied effect "'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665-666, 669, 687 N.E.2d 1352 (1998), quoting *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L.Ed.2d 648 (1986), and *Independence Bank v. Erin Mechanical*, 49 Ohio App.3d 17, 18, 550 N.E.2d 198 (8th Dist.1988); *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15; *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 24 (2008).

**{¶27}** The majority reads the arbitration provision as being limited to disputes involving the division of attorney fees after termination based, in large part, on the section headings and location of the provision in the agreement. But headings are not controlling in determining the meaning of an agreement and should not be used to alter the express language of the agreement. *See, e.g., Washington v. GEICO Ins. Co.*, 8th Dist. Cuyahoga No. 100527, 2014-Ohio-4375, ¶ 14-16 ("a heading is merely directional and for the ease of the reader"); *Jordan v. Marion Technical College*, 3d Dist. Marion No. 9-90-36, 1991 Ohio App. LEXIS 3966, *5 (Aug. 15, 1991) ("Section headings in a contract are not binding provisions. They merely guide the reader to certain provisions."); *see also Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St.3d 238, 241, 513 N.E.2d 253 (1987) ("the nature of a given provision is determined not by the label the parties

give it, but rather by the legal effect of the provision as expressed by the parties_in their agreement"). Further, placement of a provision under the "wrong heading" does not make an otherwise plain and unambiguous provision ambiguous. *See, e.g., Washington* at ¶ 15, citing *Parilla v. Parilla*, 165 Ohio App.3d 802, 2006-Ohio-1286, 848 N.E.2d 881, ¶ 29 (7th Dist.) (placing 401(k) beneficiary designation that involved death under heading entitled "divorce, dissolution or annulment" in prenuptial agreement did not render it ambiguous).

**{¶28}** Although the arbitration provision is set forth in section 9.4 of the employment agreement, entitled "Division of Attorney Fees After Termination," it clearly and unequivocally states that "[i]n the event that Lawyer and Corporation are unable to resolve *any disputes that may arise at the time of or subsequent to termination of this Agreement*, including but not limited to any disputes relative to the interpretation of this Agreement and allocation and division of attorney fees, *the parties agree to submit all such controversies to binding arbitration* in accordance with the Rules of Professional Conduct and any other requirements as mandated by the Ohio Supreme Court for resolution of disputes between attorneys." (Emphasis added.)

**{¶29}** In determining the meaning of a contractual provision, we are required to give the language used its plain and ordinary meaning, giving effect to all the words used. *See, e.g., Bohlen v. Anadarko E&P Onshore, L.L.C.*, 150 Ohio St.3d 197, 2017-Ohio-4025, 80 N.E.3d 468, ¶ 15; *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37. Although, as the majority points out, "the issue of when the dispute arose" does not appear to have been expressly raised below, I do not believe we can ignore clear and unambiguous contract language that is determinative of the matter at issue simply because the parties did not draw the court's attention to it.

**{¶30}** In this case, all of Pantages' claims are based on appellants' failure to make her a partner — a decision of which she was informed on or about December 28, 2016. The "dispute" giving rise to her claims, therefore, arose on or about December 28, 2016 — prior to her termination. Indeed, the parties entered into a tolling agreement, acknowledging that her claims accrued on or about December 28, 2016. As such, her claims are clearly outside the scope of the arbitration provision, which is limited to disputes that "may arise *at the time of or subsequent to termination of this Agreement*." (Emphasis added.)

**{¶31}** Accordingly, I would affirm the trial court's decision but for different reasons than those expressed by the majority.