[Cite as *Gilles v. Donegan*, 2024-Ohio-6023.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

DANIEL GILLES,                          :

    Plaintiff-Appellant,            :

                              No. 113744

    v.                              :

ANN MARIE DONEGAN, ET AL.,              :

    Defendants-Appellees.           :

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  December 26, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-967968

### *Appearances:*

The Ondrejech Law Firm, LLC, and Mark S. Ondrejech,
*for appellant.*

Pilawa & Brennan Co., LPA and Kimberly A. Brennan, *for
appellee* William Traine.

Lewis Brisbois Bisgaard & Smith LLP and Joseph Fiorello,
*for appellee* City of Olmsted Falls.

Marshall Dennehey P.C. and Jillian L. Dinehart, *for
appellee* Ann Marie Donegan.

WILLIAM A. KLATT, J.:

{¶ 1} Plaintiff-appellant Daniel Gilles ("Gilles") appeals the trial court's order granting summary judgment on behalf of defendants-appellees Ann Marie Donegan ("Donegan"), William Traine ("Traine"), and the City of Olmsted Falls ("the City") (collectively "the defendants"). For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} Donegan served as the mayor and safety director of the City from 2014 through 2017, and in that role Donegan attempted to reform the police department, resulting in animosity between Donegan and members of the police department. At the start of Donegan's tenure, the City employed Gilles as the Chief of Police and Lieutenant Carmen Battaglia ("Battaglia") as a member of the police force.

{¶ 3} The lawsuit below arose from a wellness check that Battaglia and Detective Alex Bakos ("Bakos") completed on August 2, 2015, at Donegan's home concerning an alleged incident between Donegan and her teenage son. Gilles instructed Battaglia and Bakos to present the potential domestic violence case against Donegan to an outside special prosecutor to avoid any conflicts of interest. Donegan was subsequently arrested, and a special prosecutor charged Donegan with domestic violence, misdemeanor menacing, and aggravated menacing. On September 9, 2015, those charges were dismissed due to lack of evidence. Gilles and Battaglia claim that Donegan led a "campaign of harassment" against them

following her arrest and prosecution and her actions led to both officers losing their jobs.

**{¶ 4}** In January 2016, Battaglia retired from his employment with the Olmsted Falls Police Department, and a few days later he entered into a "Confidential Separation Agreement and Full Release and Waiver of Claims" with the City.

**{¶ 5}** In February 2016, after the charges against Donegan were dismissed, she threatened to file suit against the City, claiming retaliation, false arrest, and malicious prosecution.

**{¶ 6}** On March 8, 2016, Traine was appointed Assistant Deputy Chief of Police with the Olmsted Falls Police Department. Traine had previously worked for the department as a part-time volunteer officer, but he was not involved with Donegan's arrest or prosecution. Upon his hiring in 2016, Traine occupied Battaglia's former office space. On March 14, 2016, while cleaning out the office desk, Traine discovered a USB drive that contained evidence relating to the domestic violence case against Donegan. The Olmsted Falls law director and other counsel representing the City asked Traine to conduct an internal investigation to assess the merits of Donegan's threatened claims against the City; the internal investigation spanned over several months.

**{¶ 7}** On June 7, 2016, Gilles was terminated as chief of police due to his failure to complete tasks in his Last Chance Agreement. The termination was affirmed by a five-to-one vote of the Olmsted Falls City Council, and Gilles entered

an "Agreement and Full Release and Waiver of Claims" ("settlement agreement") that included a nondisparagement clause. Upon Gilles's termination, Traine was appointed to serve as interim police chief.

{¶ 8} On June 14, 2016, while reviewing paperwork left unaddressed by Gilles, Traine discovered a supplemental report and other items relating to the domestic charges against Donegan. It was determined that the supplemental report and recordings were not previously provided to the special prosecutor who handled the domestic charges against Donegan. The City appointed Attorney James McDonnell ("McDonnell") to serve as an outside special prosecutor to review the internal-affairs investigation. In February 2017, McDonnell determined there was probable cause to believe Gilles and Battaglia committed the crime of tampering with evidence related to Donegan's domestic-violence case and Gilles's management of the Donegan case constituted dereliction of duty.

{¶ 9} In March 2017, Donegan and the City entered a settlement in regard to Donegan's claims of improper conduct by Battaglia and Gilles in their pursuit of the charges against her. The City agreed to pay Donegan $450,000 in exchange for a release of all her claims against the City.

{¶ 10} Following Donegan's settlement, the City received several public-records requests to obtain all documents related to the arrest and prosecution of Donegan as well as the internal-affairs investigation. On August 31, 2017, the City released the requested records and Traine conducted a press conference.

{¶ 11} At the press conference, Traine detailed the basis for the charges against Donegan; Donegan's allegations against the City; and the conclusions of the internal-affairs investigation that served as the basis for the City's settlement with Donegan. Traine stated that a special prosecutor reviewed the Olmsted Falls Police Department's investigation of Donegan and found probable cause to believe two members of the police force committed some crimes in the investigation.

{¶ 12} In addition to the press conference, Donegan issued a written statement to the press that stated "rogue police leaders, who have since left the department" attempted to convict her "of trumped up charges."

{¶ 13} On October 4, 2017, Gilles filed a complaint with the Cuyahoga County Court of Common Pleas ("first complaint") alleging defamation against Donegan and Traine based upon statements made at the press conference, and breach of contract against the City. *See* Cuyahoga C.P. No. CV-17-886932.[1] Gilles unsuccessfully attempted to amend his complaint to add claims for invasion of privacy, false light, and civil liability for criminal acts and, on May 23, 2019, Gilles dismissed the first complaint without prejudice.

{¶ 14} On August 27, 2019, Gilles filed a complaint in the United States District Court for the Northern District of Ohio ("federal complaint"), naming the same three defendants and raising 42 U.S.C. 1983 ("Section 1983") claims and State causes of action including defamation, false light, breach of contract, and spoliation

---

[1] On October 19, 2017, Battaglia filed a complaint raising the same causes of action against the same defendants in Cuyahoga C.P. No. CV-17-887654.

of evidence.  *See* 1:19-cv-01968.[2]  Specifically, Gilles asserted that he suffered injury to his personal and professional reputation and sought to recover for alleged economic injuries, humiliation, and emotional distress.  On August 6, 2022, the federal court granted the defendants' motions for summary judgment on the federal claims and dismissed without prejudice the State claims that it determined were best suited for resolution in the State court.

{¶ 15}  On August 26, 2022, Gilles refiled his complaint with the Cuyahoga County Court of Common Pleas, naming Donegan, Traine, and the City as defendants, and alleged defamation, false light, breach of contract, civil liability for criminal acts pursuant to R.C. 2307.60, tortious interference with contract, breach of fiduciary duty, fraudulent concealment, promissory estoppel, equitable estoppel, conspiracy, and respondeat superior ("third complaint").  On January 8, 2024, the three defendants individually moved for summary judgment arguing the claims were barred by the statute of limitations or were otherwise unsupported by the evidence.  The trial court granted the defendants' motions for summary judgment.

{¶ 16}  On March 20, 2024, Gilles filed a timely notice of appeal presenting three assignments of error:[3]

> I:  The trial court erred by granting summary judgment on plaintiff Gilles' defamation claim and false light claims on statute of limitations grounds.

---

[2] The federal complaint was filed on behalf of both Gilles and Battaglia.

[3] The instant appeal is a companion case to Battaglia's appeal.  *See Battaglia v. Donegan, et al.*, 8th Dist. Cuyahoga No. 113743.

II:  The trial court erred in finding that the plaintiff could show no set of facts to prove that the August 31, 2017 statements about Gilles and Battaglia by Donegan and Traine (by extension, the City) were false.

III:  The trial court erred in granting defendant-appellees' motions for summary judgment on plaintiff's breach of contract claim because the court's finding that plaintiff can prove no set of facts that would prove the statements made in the press conference were disparaging.

**Legal Analysis**

**A. Motion for Summary Judgment**

**1. Standard of Review**

{¶ 17}  Before a trial court grants a motion for summary judgment, pursuant to Civ.R. 56(C), the court must determine that

> (1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶ 18}  On a summary judgment motion, the moving party's initial burden is to identify specific facts in the record that demonstrate its entitlement to summary judgment.  *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996).  If the moving party does not satisfy this burden, summary judgment is not appropriate.  If the moving party meets the burden, the nonmoving party has a reciprocal burden to point to evidence of specific facts in the record that demonstrate the existence of a genuine issue of material fact for trial.  *Id.* at 293.  Where the nonmoving party fails to meet this burden, summary judgment is appropriate.  *Id.*

{¶ 19} An appellate court applies a de novo standard when reviewing a trial court's decision that granted summary judgment. *Bayview Loan Servicing, L.L.C. v. St. Cyr*, 2017-Ohio-2758, ¶ 11 (8th Dist.).

## 2. Statute of Limitations

{¶ 20} In his first assignment of error, Gilles argues the trial court erroneously determined his defamation and false light claims were filed outside the statute of limitations and granted the defendants' summary judgment motions on those claims.

{¶ 21} There can be only one recovery for defamation and false light claims that arise from the same set of facts. *Stainbrook v. Ohio Secy. of State*, 2017-Ohio-1526, ¶ 25 (10th Dist.), citing *Welling v. Weinfeld*, 2007-Ohio-2451, ¶ 57. Defamation and false light claims are both subject to a one-year statute of limitations. *Id.* at ¶ 27; R.C. 2305.11(A). Further, a defamation claim accrues on the date of publication of the alleged defamatory statement. *Foster v. Wells Fargo Fin. Ohio, Inc.*, 2011-Ohio-4632, 960, ¶ 15 (8th Dist.), citing *Lewis v. Delaware Cty. JVSD*, 2005-Ohio-2550 (5th Dist.), and *Altier v. Valentic*, 2004-Ohio-5641 (11th Dist.). It is undisputed that Gilles's defamation and false light claims accrued on the date of the press conference — August 31, 2017 — and a complaint had to be filed within one year of that date.

## (a) False Light Claims and Defamation Claim Against the City

{¶ 22} On October 4, 2017, Gilles filed his first complaint asserting defamation by Donegan and Traine and breach of contract by the City. The one-year

statute of limitations for defamation and false light claims expired on August 31, 2018. After the expiration of the statute of limitations, Gilles dismissed the first complaint without prejudice. On August 27, 2019, almost one year after the statute of limitations expired, Gilles filed his federal complaint and alleged for the first time defamation by the City and false light by all three defendants. Because Gilles raised these claims more than one year after the claims accrued, the defamation claim against the City and the false light claims against the defendants were barred by the statute of limitations. The trial court did not err when it granted summary judgment on those grounds.

### (b) Defamation Claims Against Donegan and Traine

{¶ 23} As stated previously, on October 4, 2017, Gilles timely filed his first complaint alleging defamation claims against Donegan and Traine. On May 23, 2019, Gilles voluntarily dismissed the first complaint without prejudice. Even though the defamation claim's one-year statute of limitations had expired when Gilles voluntarily dismissed his first complaint, he could file the complaint within one year of the dismissal under R.C. 2305.19, the Ohio saving statute. On August 27, 2019, Gillis filed his complaint in federal court, alleging numerous causes of action including defamation against Donegan and Traine.[4] Only the defamation claims are relevant to this appeal.

---

[4] The federal complaint also alleged Section 1983 and false light claims against all three defendants, breach of contract by the City, and spoliation of evidence by Donegan and Traine.

{¶ 24} On August 8, 2022, the federal court dismissed the defamation claims without prejudice. Gilles then filed his third complaint on August 26, 2022, with the Cuyahoga County Common Pleas Court alleging defamation by Donegan, Traine, and the City. Gilles contends his third complaint was timely filed relying on the application of three legal theories: (1) the federal complaint related back to the filing date of his first complaint pursuant to *Frysinger v. Leech*, 32 Ohio St.3d 38 (1987), (2) the exclusion of the one-use rule of the saving statute as decided by the Ohio Supreme Court in *McCullough v. Bennett*, 2024-Ohio-2783, and (3) the supplemental jurisdiction of the federal court under 28 U.S.C. 1367(d) that tolled the statute of limitations while the case was pending in federal court.

**(i) *Frysinger*'s Relation-Back Theory**

{¶ 25} Gilles argues that pursuant to the *Frysinger* Court's interpretation of the saving statute, his federal complaint related back to the filing date of the first complaint — October 4, 2017 — which preceded the expiration of the statute of limitations and, therefore, his third complaint was timely filed.

{¶ 26} Gilles's proposed argument ignores the Ohio Supreme Court's decision in *Wilson v. Durrani*, 2020-Ohio-6827. The *Wilson* Court reasoned that the relation-back language in *Frysinger* was dicta that the court was not obligated to give binding effect to, and the Court rejected the application of the relation-back argument:

> Moreover, our statement in *Frysinger* about a refiled action relating back was dicta. *See Vogel v. Northeast Ohio Media Grp. LLC*, 9th Dist. Medina No. 19CA0003-M, 2020-Ohio-854, ¶ 13, 152 N.E.3d 981. The

questions presented in *Frysinger* were when a cause of action for medical malpractice accrues and whether a voluntary dismissal pursuant to Civ.R. 41(A)(1) constitutes a failure otherwise than on the merits. The statement about relation back was of no consequence to our determination of those issues, and we are not obligated to give it binding effect. *See Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.*, 70 Ohio St.3d 281, 284, 1994-Ohio-295, 638 N.E.2d 991 (1994) (plurality).

*Wilson* at ¶ 27.

{¶ 27} According to *Wilson*, the saving statute results in the commencement of a new action, rather than a reactivation of a prior action, and the plain language of the statute does not state the new action relates back to the filing of the prior action. *Wilson* at ¶ 28. The *Wilson* Court further stated that

because the saving statute specifically permits the refiling of an action beyond the expiration of the statute of limitations, so long as the refiling occurs within one year of a failure of the prior action otherwise than on the merits, there is no need for the refiled complaint to relate back.

*Id.*; *see Vogel v. Northeast Ohio Media Group LLC*, 2020-Ohio-854, ¶ 13 (9th Dist.).

{¶ 28} In light of the holding in *Wilson*, Gilles's federal complaint did not relate back to October 4, 2017 — the filing of the first complaint — but constituted a new action pursuant to the saving statute. Thus, the *Frysinger* relation-back theory does not apply to the filing of Gilles's federal complaint.

**(ii) *McCullough v. Bennett and* 28 U.S.C. 1367(d)**

{¶ 29} Gilles now asserts his third complaint was timely filed on August 26, 2022, in accordance with the *McCullough* Court's rejection of the one-use restriction

of the saving statute and the federal court's supplemental jurisdiction that tolled the statute of limitations. *McCullough*, 2024-Ohio-2783.

{¶ 30} Citing to *McCullough*, Gilles contends that the trial court erroneously relied on *Thomas v. Freeman*, 79 Ohio St.3d 221 (1997), and *Vogel*, 2020-Ohio-854 (9th Dist.), when it determined Gilles's use of the R.C. 2305.19(A) saving statute to file in federal court prevented him from using the saving statute a second time to file his third complaint. Gilles argues *McCullough* eliminated the "one-use restriction" of the saving statute and he could, therefore, implement the saving statute more than once. Gilles reasoned his third complaint was filed within one year after the federal court dismissal without prejudice and, thus, was timely filed pursuant to the saving statute. Further, Gilles argues the statute of limitations was tolled by 28 U.S.C. 1367(d) during the pendency of his federal case so that the third complaint was filed within the applicable one-year statute of limitations.

{¶ 31} *McCullough* stems from an automobile accident. A two-year statute of limitations applied to McCullough's claim, with the claim expiring on April 27, 2019. McCullough filed a complaint on January 15, 2018, and after service was returned unclaimed, the trial court dismissed the case without prejudice on February 28, 2018. McCullough filed a second complaint on June 27, 2018, and the second complaint was dismissed without prejudice on November 27, 2018, for failure to prosecute. The first two complaints were filed prior to expiration of the statute of limitations. After the statute of limitations expired and pursuant to the saving statute, McCullough filed a third lawsuit on September 12, 2019.

{¶ 32} Bennett filed a motion to dismiss McCullough's third complaint on the premise that it was time-barred because the statute of limitations had expired. Bennett also argued the saving statute could not rescue the third complaint because McCullough had already dismissed and refiled the case, implying the saving statute could be used only once.

{¶ 33} The Ohio Supreme Court in *McCullough* declined to adopt and follow the judicially created one-use limitation of the saving statute, finding the plain language of the statute did not prohibit using the saving statute more than once. The *McCullough* Court declined to adopt dicta in *Thomas,* 79 Ohio St.3d 221 (1997) — "the savings statute can be used only once to refile a case" — that several district courts of appeal had relied on to justify the one-use limitation. *Thomas* at 227.

{¶ 34} The facts in the instant case are distinguishable from *McCullough*. McCullough filed his first two complaints before the applicable statute of limitations expired, and his third complaint was the first and only filing after the expiration of the statute of limitations. *McCullough* appears to be limited to a single refiling of a complaint after the expiration of the statute of limitations and does not encompass situations where the statute of limitations could be indefinitely extended:

> Further, the concern that motivated the *Thomas* dicta — the danger that a plaintiff could indefinitely extend the expiration of the statute of limitations by convincing a trial court to order serial dismissals without prejudice under Civ.R. 41(A)(2)—does not exist in this case. McCullough filed his second complaint before the expiration of the statute of limitations, and his third complaint was filed within a year of the dismissal of the second complaint. This is not a case that involves an attempt to indefinitely extend the statute of limitations, but rather,

one that presents a single refiling after the expiration of the limitations period.

*McCullough,* 2024-Ohio-2783 at ¶ 20. In contrast, Gilles filed his federal complaint *after* the defamation statute of limitations expired. Gilles's filing of his third complaint was the second refiling after the expiration of the applicable statute of limitations and an attempt to evade or extend the statute of limitations. This court recently found that "the saving statute cannot permit the refiling of claims into perpetuity because to do so would defeat the statute of limitations. We must, therefore, consider the saving statute in the context of the statute of limitations." *Battaglia v. Donegan,* No. 113743, ¶ 39 (8th Dist.). Application of the Ohio Supreme Court's decision in *McCullough* did not determine if Gilles timely filed his third complaint.

{¶ 35} Gilles also argues the statute of limitations was tolled and, therefore, not expired when he filed the third complaint. 28 U.S.C. 1367(d) provides that the statute of limitations applicable to any State-law claims over which the federal courts have supplemental jurisdiction "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. 1367(d). Gilles contends that under the supplemental jurisdiction statute, 28 U.S.C. 1367(d), the one-year statute of limitations was tolled while the case was pending in federal court, and an additional 30 days were added to the statute of limitations when the federal court dismissed the State-law claims without prejudice.

{¶ 36} Specifically, Gilles reasons that under the tolling statute, when the federal court dismissed Gilles's complaint on August 6, 2022, he had 361 days to refile his claims in State court and, therefore, his third complaint was timely filed just a few days later on August 26, 2022.[5] However, when Gilles filed his federal complaint, the defamation claim's statute of limitation had already expired and the tolling provision of 28 U.S.C. 1367(d) was inapplicable because there was no time left on the statute of limitations to toll. *Vogel*, 2020-Ohio-854, ¶ 10 (9th Dist.) ("Because the one-year limitations on Mr. Vogel's libel, defamation, and false-light claims had already expired by the time he filed his federal action, there was nothing left for Section 1367(d) to toll during that action."). Similar reasoning was presented in *Artis v. Dist. of Columbia*, 583 U.S. 71 (2018), where the court found it would be "an absurdity" to interpret 28 U.S.C. 1367(d) to "permit[ ] a plaintiff to refile in state court even if the limitations period on her claim had expired before she filed in federal court." *Artis* at 72.

{¶ 37} Gilles, relying on *Harris v. O'Brien*, 2006-Ohio-109 (8th Dist.), also asserts that the supplemental jurisdiction statute, 28 U.S.C. 1367(d), provides him an additional 30 days to refile his third complaint, regardless of the statute of limitations. This argument is not consistent with the *Artis* decision that was decided

---

[5] Gilles's calculations took into consideration (1) the one-year statute of limitations — or 365 days — (2) less 34 days that elapsed before Gilles filed his first complaint on October 4, 2017, (3) plus the additional 30 days permitted under 28 U.S.C. 1367(d) after a federal court's dismissal. *See Artis v. Dist. of Columbia*, 583 U.S. 71, 83 (2018) (Section 1367(d) is a tolling provision that "suspends the statute of limitations for two adjacent time periods: while the claim is pending in federal court and for 30 days postdismissal.").

after *Harris.* The *Artis* Court "rejected the concept that 28 U.S.C. 1367(d) provides a 30-day grace period for refiling after a federal-court dismissal. . . ." *Rebel Underwood v. Mercy Health Physicians N., LLC*, 2022-Ohio-4313, ¶ 50 (6th Dist.), citing *Artis* at 74-76. When a statute of limitations expires prior to a filing in federal court, there is no statute of limitations to toll and, therefore, no 30-day grace period under 28 U.S.C. 1367(d) applies. *Id.*

{¶ 38} The one-year statute of limitations applicable to Gilles's defamation claims expired before he filed his federal complaint. Although Gilles's federal complaint was permissible under the saving statute, there was no statute of limitations to toll and no 30-day grace period to extend the statute of limitations after the federal court's dismissal. Thus, the trial court did not err when it found Gilles's defamation claims were barred by the statute of limitations. Gilles's first assignment of error is without merit and is overruled.

**3. Defamation Claim**

{¶ 39} In his second assignment of error, Gilles argues the trial court erred when it found there was no set of facts to prove the August 31, 2017 statements about Gilles and Battaglia were false. However, our finding that the trial court correctly determined Gilles's defamation and false light claims were barred when they were filed outside the statute of limitations renders this assigned error moot. *See* App.R. 12(A)(1)(c). Gilles's second assignment of error is overruled as moot.

## 4. Breach-of-Contract Claim

{¶ 40} In his third assignment of error, Gilles argues that the trial court erred when it found there was no set of facts to prove the statements made on August 31, 2017, breached the nondisparagement clause contained in the settlement agreement between the City and Gilles. Specifically, Gilles argues Donegan and Traine breached the settlement agreement with statements made during the August 31, 2017 press release.

{¶ 41} On July 27, 2016, Gilles and the City executed a settlement agreement that reads, in pertinent part:

> Non-Disparagement. Gilles agrees not to make any false, derogatory, negative or disparaging comments concerning the City or his employment with the City, its operations, or any of the Released Parties, whether orally or in writing, including on social media networking sites, to any third party. *The City also agrees to instruct its Mayor and Council Members not to make any false or disparaging comments, whether orally or in writing, including on social media networking sites, concerning Gilles during their tenure with the City.* All prospective employment reference inquiries shall be directed to the Finance Director and prospective employers will be provided with a neutral reference, containing only Gilles' last position held and dates of employment. Nothing in this provision will prevent the City, however, from responding to properly directed public records requests.

Settlement agreement, paragraph I (emphasis added).

{¶ 42} To prevail on a breach-of-contract claim, a plaintiff must present evidence to establish "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Corsaro v. ARC Westlake Village, Inc.*, 2005-Ohio-1982, ¶ 20 (8th Dist.). A contract that utilizes clear and unambiguous language requires no real interpretation or construction,

and courts will give effect to the plain language of the contract. *Abrams v. Grenny Properties, L.L.C.*, 2016-Ohio-8303, ¶ 9 (8th Dist.), citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55 (1989).

{¶ 43} Here, Gilles entered the settlement agreement with the City, and Gilles conceded in his complaint that the nondisparagement clause is unambiguous. The nondisparagement clause obligated the City to instruct Donegan and city council members not to make any false or disparaging comments about Gilles.

{¶ 44} The City argued in their motion for summary judgment that for Gilles to prevail on his breach-of-contract claim, he needed to demonstrate that the City failed to instruct Donegan not to make any such statements and Donegan made false or disparaging statements about Gilles. According to the City, Donegan signed the settlement agreement on behalf of the City, and the terms of the settlement agreement instructed Donegan about the nondisparagement clause. Specifically, the last sentence of the settlement agreement, located directly above Donegan's signature line, reads:

> By signing this Agreement, each party acknowledges that they: (a) have authority and capacity to enter into this Agreement; (b) fully and completely understand and accept the terms of this Agreement; and (c) enter into it voluntarily and of their own free will.

Donegan testified that she read the above-cited language prior to her execution of the agreement on behalf of the City.

{¶ 45} Gilles countered in his brief in opposition to the City's summary judgment motion that

[t]he City breached the contract by publishing false statements about Gilles and disparaging him in Traine's press conference and in Donegan's statement. The City attempts to weasel out of the obligation not to disparage Gilles by claiming that it had no obligation not to disparage him, but only the obligation to instruct its Mayor not to do so. The Court should not reward the City's weaseling. After all, "[t]he paramount objective in construing any written instrument is to ascertain the parties' intent. Contracts should generally be construed so as to give effect to that intention." *Law Office of Craig T. Weintraub v Bruner*, 8th Dist. Cuyahoga Nos. 110854, 110859, 2022-Ohio-1939, ¶ 25, quoting *Parkbrook Dev. Corp. v. N. Reflections*, 1995 Ohio App. LEXIS 1715, at 8-9 (Apr. 27, 1995), citing *Skivolocki v E. Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. Moreover, in addition to a contract's express terms, every contract imposes an implied duty of good faith and fair dealing in its performance and enforcement. *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 42.

To adopt the City's interpretation of the contract would disregard its obligation of good faith and fair dealing to Gilles, as well as the intent that Gilles would not be disparaged.

Brief in opposition to the City's summary judgment motion, p. 55-56.

{¶ 46} While Gilles argues the nondisparagement provision (1) obligates the mayor to be notified of the terms and (2) precludes the mayor from making disparaging comments, we do not interpret the provision in that same manner. A plain reading of the provision — to which Gilles agreed — simply requires the City to instruct the mayor and city council not to make any false or disparaging comments about Gilles and imposes no obligation by the mayor or council members to refrain from making false or disparaging comments.

{¶ 47} The mayor and the city council members are representatives of the City. The very terms of the settlement agreement state the signatory fully and completely understood and accepted the terms of the settlement agreement.

Donegan's signature on the settlement agreement, along with her deposition testimony, establish that the City satisfied the terms of the provision when Donegan self-informed herself about the nondisparagement provision. These are the terms Gilles agreed to, and we do not find that they represent a lack of good faith or fair dealing.

{¶ 48} The trial court granted the defendants' motions for summary judgment on the breach-of-contract claim because there was "no set of facts that would prove the statements made in the Press Conference were false or disparaging." March 4, 2024 journal entry, p. 10. We agree with the trial court's decision but for different reasons. We find summary judgment was appropriate on the breach-of-contract claim where the City complied with its contractual duty to instruct Donegan not to make false or disparaging statements about Gilles. "Because review of summary judgment is de novo, a reviewing court may affirm a trial court's decision for different reasons." *Robinson v. Vehicle Acceptance Corp.*, 2017-Ohio-6886, ¶ 16 (8th Dist.), citing *Mosley v. Cuyahoga Cty. Bd. of Mental Retardation*, 2011-Ohio-3072, ¶ 52 (8th Dist.), citing *Cordray v. Internatl. Preparatory School*, 2010-Ohio-6136, ¶ 31.

{¶ 49} Thus, Gilles's third assignment of error is without merit and is overruled.

{¶ 50} Judgment affirmed.

It is ordered that appellees recover the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
WILLIAM A. KLATT, JUDGE*

EILEEN T. GALLAGHER, P.J., and
MICHAEL JOHN RYAN, J., CONCUR


(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court of Appeals.)