[Cite as *Smith v. Mercy Health-Clermont Hosp., L.L.C.*, 2025-Ohio-1590.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STEPHANIE SMITH,                          :

    Appellant,                          :          CASE NO. CA2024-02-010

                                     :          O P I N I O N
                                                                         5/5/2025
    - vs -                          :

                                       :

MERCY        HEALTH-CLERMONT  :
HOSPITAL, LLC, et al.,

    Appellees.                          :

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2023 CVA 00692

Rittgers, Rittgers & Nakajima, and Lindsay A. Lawrence and Josphe W. Shea III; Flowers & Grube, and Louis E. Grube and Kendra Davitt, for appellant.

Rendigs, Fry, Kiely & Dennis, L.L.P., and C. Jessica Pratt, for appellee, Mercy Health-Clermont Hospital, LLC.

Calderhead, Lockemeyer & Peschke, and Joshua F. DeBra, for appellees, EMG of Cincinnati, LTD and Samantha Yelley, D.O.

Frost Brown Todd, LLC, and Maureen A. Bickley and Kaitlyn Hawkins-Yokley, for appellee, Laboratory Corporation of America Holdings.


**HENDRICKSON, P.J.**

{¶ 1} Appellant, Stephanie Smith, appeals the dismissal of her medical-negligence claims on statute-of-limitations grounds. She argues that federal law tolled the

limitations period. For the reasons that follow, we affirm the trial court's dismissal.

## I. Factual and Procedural Background

{¶ 2}   On October 26, 2019, Smith sought treatment in the emergency department at Mercy Health-Clermont Hospital ("Mercy Clermont") for left knee pain. Following discharge, she was instructed to consult her primary-care physician. Five days later, on October 31, Smith followed these instructions and visited Dr. Roger Chang at HealthSource of Ohio. During this appointment, an employee of Laboratory Corporation of America Holdings ("LabCorp") attempted, without success, to draw Smith's blood. Later that same day, Smith discovered a hardened knot on her arm where LabCorp's employee had tried to draw blood, which progressively worsened and became increasingly painful. This development prompted her return to Mercy Clermont's emergency department, where she received care from Dr. Samantha Yelley. Smith was diagnosed with "an injury of the right brachial artery at high risk for compartment syndrome and intramuscular hematoma." The following day, November 1, 2019, Smith underwent surgical exploration and repair of her right brachial artery at a different medical facility. Following eight days of inpatient care, she was discharged on November 9, 2019. Smith alleges that negligent treatment by Mercy Clermont, Dr. Chang, HealthSource, LabCorp, Dr. Yelley, and others resulted in compartment syndrome and permanent functional impairment of her right arm.

{¶ 3}   On October 23, 2020—mere days before the one-year statute of limitations for medical claims under R.C. 2305.113(A) would expire—Smith filed a complaint in the Clermont County Court of Common Pleas. This action named multiple defendants: Mercy Clermont, LabCorp, Dr. Yelley, Emergency Medicine Physicians of Cincinnati, Ltd. ("EMP"), HealthSource, and Dr. Chang. The complaint alleged various claims of medical negligence.

{¶ 4}   The Public Health Service ("PHS") Act establishes the Federal Tort Claims

- 2 -

Act ("FTCA") as the exclusive remedy against the United States for personal injuries resulting from medical services performed by PHS employees acting within their scope of employment. *See Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 406 (6th Cir. 2024), citing 42 U.S.C. 233(a). Under the Federally Supported Health Centers Assistance Act ("FSHCAA"), healthcare entities receiving federal funds under the PHS Act, together with their employees, are "deemed" PHS employees for purposes of malpractice liability. When FSHCAA applies, the United States substitutes itself as the defendant, and litigation proceeds according to the FTCA's provisions. The FTCA imposes an administrative-exhaustion requirement, mandating that plaintiffs file an administrative claim with the appropriate federal agency before initiating litigation. *See* 28 U.S.C. 2675(a). HealthSource qualified as a covered community health center under the FSHCAA, rendering the FTCA Smith's exclusive remedy against both HealthSource and Dr. Chang. Accordingly, on October 21, 2020, Smith submitted an administrative claim to the Department of Health and Human Services ("HHS").

{¶ 5} On January 26, 2021, the United States removed the case to federal court ("Case 1"). *See* 28 U.S.C. 1442(a)(1) (removal statute). The United States then substituted itself as defendant for claims against HealthSource and Dr. Chang. On March 29, 2021, the United States moved to dismiss Case 1, contending that Smith had failed to satisfy the FTCA's administrative-exhaustion requirement. By April 15, 2021, Smith's administrative claim had been constructively denied, as HHS had taken no action for six months. *See* 28 U.S.C. 2675(a). In an effort to comply with the FTCA's exhaustion requirement, Smith filed a second action in federal court on September 3, 2021, asserting identical claims against the same defendants ("Case 2"). Contemporaneously, she moved to consolidate Cases 1 and 2. On September 7, 2021, Smith filed her first amended complaint in Case 2, jettisoning the state-court defendants and narrowing the case to

claims against only the United States. The district court declined to consolidate the two cases but did transfer Case 2 to the same judge who was presiding over Case 1.

{¶ 6} On November 17, 2021, the parties participated in a status conference with the district court, during which both the United States's motion to dismiss and Smith's motion to consolidate were discussed. The parties reached an agreement whereby Case 1 would be dismissed and Smith would file an amended complaint in Case 2 to reintroduce the state-court defendants. Consequently, on January 3, 2022, Case 1 was dismissed by stipulated order. Smith then filed a second amended complaint in Case 2 on January 14, 2022, reinstating claims against all original defendants, including Mercy Clermont, LabCorp, Dr. Yelley, and EMP.

{¶ 7} Following additional litigation and discovery, Smith moved to dismiss the United States from Case 2, which the district court granted on May 1, 2023. With the federal defendant no longer party to the action, the district court declined to exercise supplemental jurisdiction over Smith's remaining state-law claims. *See* 28 U.S.C. 1367 (supplemental-jurisdiction statute). On June 20, 2023, after briefing from all parties, the court dismissed Case 2 "without prejudice for refiling in the state court." Smith had requested that the court remand the case to state court, but the district court denied this request, explaining that because Case 2 originated in federal court—rather than having been removed from state court—remand was procedurally impossible.

{¶ 8} On July 13, 2023, Smith filed the present action in the Clermont County Court of Common Pleas, reasserting her medical-negligence claims against Mercy Clermont, LabCorp, Dr. Yelley, and EMP. The defendants moved for dismissal—LabCorp under Civ.R. 12(B)(6), the other defendants under Civ.R. 12(C)—arguing that the statute of limitations had expired well before Smith filed this action, and that she had already used Ohio's savings statute when filing Case 2 in federal court, thereby precluding its use

again. Smith responded with the argument that the supplemental-jurisdiction statute, 28 U.S.C. 1367(d), tolled the statute of limitations.

{¶ 9} The trial court agreed with the defendants' position and dismissed all Smith's claims. The court concluded that the one-year statute of limitations had expired in November 2020; that Smith had already invoked Ohio's savings statute when filing Case 2; and that the tolling provision in the federal supplemental-jurisdiction statute was inapplicable because the original limitations period had already lapsed before Case 1 was removed to federal court.

{¶ 10} Smith appealed.

## II. Analysis

{¶ 11} Smith presents two assignments of error. She contends that the trial court erred by failing to recognize that 28 U.S.C. 1367(d) tolled the statute of limitations while her claims were pending and erred by declining to apply the relation-back doctrine to her second amended complaint in Case 2.

{¶ 12} The procedural posture of this case requires some attention. The trial court dismissed the claims against LabCorp under Civ.R. 12(B)(6), while dispatching those against Mercy Health, Yelley, and EMP under Civ.R. 12(C). Civ.R. 12(B)(6) permits dismissal when a complaint "fails to state a claim upon which relief can be granted." *Ebbing v. Stewart*, 2016-Ohio-7645, ¶ 11 (12th Dist.). This standard requires that "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus. The Civ.R. 12(B)(6) inquiry is circumscribed, confined to the four corners of the complaint. Civ.R. 12(C), while similar in purpose, differs in scope. Unlike Rule 12(B)(6), which "must be judged on the face of the complaint alone," Rule 12(C) "permits consideration of the complaint and answer." *State ex rel. Midwest Pride IV v. Pontious*,

75 Ohio St.3d 565, 570, 1996-Ohio-459.

**{¶ 13}** Despite these procedural differences, our standard of review is the same. Dismissals under both Civ.R. 12(B)(6) and Civ.R. 12(C) are reviewed de novo. *See Perrysburg Twp. v. Rossford*, 2004-Ohio-4362, ¶ 5 (Civ.R. 12[B][6] dismissals); *White v. King*, 2016-Ohio-2770, ¶ 13 (Civ.R. 12[C] dismissals). Under this standard, we examine the legal questions with fresh eyes, giving no deference to the trial court's conclusions.

**{¶ 14}** The trial court here expressly noted that it relied solely on Smith's complaint and the four exhibits that she attached to and incorporated in the complaint to reach its dismissal decisions, *see State ex rel. Woods v. Heekin*, 2024-Ohio-1719, ¶ 15, fn. 2 ("Material incorporated in a complaint may be considered part of the complaint for purposes of determining a Civ.R. 12[B][6] motion to dismiss." [Citation omitted.]). We do the same and apply the narrower Civil Rule 12(B)(6) standard to all the dismissed claims.

**{¶ 15}** The statute-of-limitations defense presents a particular wrinkle in this dismissal framework. As an affirmative defense, *Bank of New York Mellon Trust Co., N.A. v. Unger*, 2015-Ohio-769, ¶ 9 (8th Dist.), it ordinarily lies beyond the reach of a Civ.R. 12(B)(6) motion because such defenses "generally require[] reference to materials outside the complaint," *Columbus Green Bldg. Forum v. State*, 2012-Ohio-4244, ¶ 24 (10th Dist.). Accordingly, dismissal based on a statute of limitations is proper under Civ.R. 12(B)(6) only where "the complaint conclusively shows that the action is time-barred." *Id.* The Ohio Supreme Court has established a clear boundary: A motion to dismiss a complaint under Civ.R. 12(B) "which is based upon the statute of limitations is erroneously granted where the complaint does not conclusively show on its face the action is barred by the statute of limitations." *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St.2d 376, 379 (1982).

**{¶ 16}** With the framework for our review in place, we turn to the assignments of

error.

## A. Does 28 U.S.C. 1367(d) permit retroactive tolling?

{¶ 17} The first assignment of error alleges:

THE TRIAL COURT ERRED BY DISMISSING CLAIMS AND ORDERING JUDGMENT ON THE PLEADINGS BECAUSE FEDERAL LAW TOLLED THE STATUTE OF LIMITATIONS.

{¶ 18} Smith's argument in the first assignment of error presents a question about the interaction between federal and state procedural law: Whether the supplemental-jurisdiction statute, 28 U.S.C. 1367(d), tolls a state statute of limitations from the moment a complaint containing a federal claim is filed in state court, even when that claim is not removed to federal court until after the limitations period expires.

{¶ 19} 28 U.S.C. 1367(d) is designed to protect plaintiffs who pursue state-law claims in federal courts under supplemental jurisdiction. Federal courts may exercise supplemental jurisdiction over state-law claims that form part of the same case or controversy as claims within the court's original jurisdiction. 28 U.S.C. 1367(a). However, when federal courts dismiss the jurisdictional-anchor claims, they may, and frequently do, decline to exercise supplemental jurisdiction over the remaining state claims, dismissing them without prejudice. Section 1367(d) ensures that plaintiffs are not time-barred from refiling these state claims in state courts by tolling the limitations period during federal proceedings and for 30 days post-dismissal:

(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

{¶ 20} The Supreme Court in *Artis v. Dist. of Columbia*, 583 U.S. 71, 75 (2018), held that "tolled" under section 1367(d) means the statute of limitations is entirely

suspended ("stop-the-clock")—rather than merely extended—while claims are pending in federal court. That is, "[i]t suspends the statute of limitations for two adjacent time periods: while the claim is pending in federal court and for 30 days postdismissal." *Id.* at 83. This approach preserves the plaintiff's remaining time rather than merely providing a grace period after dismissal. So, for example, if a state claim has a three-year limitations period and spends two years in federal court, the plaintiff retains the full three years minus the time already accrued before federal filing, plus 30 days post-dismissal.

{¶ 21} The case before us, though, originated in state court but later traveled to federal court through removal. The question raised here by Smith is whether the "stop-the-clock" mechanism applies retroactively to the period when a case was pending in state court before removal to federal court, particularly when removal occurs after the state limitations period would otherwise expire.

{¶ 22} Removal jurisdiction allows defendants to transfer certain cases from state to federal court when federal jurisdiction exists. *See* 28 U.S.C. 1441. But section 1367(d)'s tolling applies only to claims "pending in federal court." *Artis* at 83. This textual limitation excludes the pre-removal period when claims were pending exclusively in state court. Accordingly, if a plaintiff files mixed federal-state claims in state court and the defendant later removes the case to federal court, but only after the state limitations period has expired, in such circumstances, section 1367(d) does not reach back in time to toll the limitations period for the interval the case was in state court. The tolling begins only upon removal, when the state claims come under the federal court's supplemental jurisdiction. If the state limitations period expired before removal, the plaintiff's state claims are already time-barred, and section 1367(d) offers no relief. Nothing in the removal statute indicates that the case should be treated as if it had been originally filed in federal court for purposes of section 1367(d)'s operation. *See* 28 U.S.C. 1441. Section 1367(d)'s tolling mechanism

focuses exclusively on the time claims spend in federal court.

**{¶ 23}** Reading section 1367(d) to retroactively toll pre-removal periods would disconnect the provision from its statutory context. Division (a) of section 1367 expressly refers to claims over which "district courts have original jurisdiction" and related claims within the same case or controversy. The reference to "district courts" plainly invokes federal courts, not state courts. When section 1367(d) refers to tolling for "any claim asserted under subsection (a)," it necessarily refers to claims properly within federal jurisdiction. The Supreme Court's decision in *Artis* reinforces this understanding. The Court explained that section 1367(d) "suspends the statute of limitations for two adjacent time periods: while the claim is pending in federal court and for 30 days postdismissal." *Artis* at 83. This language reflects the provision's careful calibration.

**{¶ 24}** Smith's contrary interpretation rests on a novel conception of when federal jurisdiction attaches. While federal courts' original jurisdiction may exist in the abstract from the moment a claim triggering that jurisdiction is commenced, this principle presupposes that the claim has been properly presented to a federal forum. Certain statutory schemes specifically vest jurisdiction in federal courts, but this jurisdiction does not materialize until the case arrives there. The FTCA, to take a relevant example, vest exclusive jurisdiction in the federal district courts for claims arising from the tortious conduct of government employees acting within the scope of their official duties. *See Bray*, 97 F.4th at 406. "When a Plaintiff files a claim in state court that is later removed to federal court pursuant to FTCA, 'jurisdiction under section 2675(a) [administrative-exhaustion requirement] does not arise until after removal to the district court, for only there does the action become one against the United States.'" *Whitney v. Percell*, 2012 U.S. Dist. LEXIS 53275, *3 (D. Ariz. Apr. 16, 2012), quoting *Staple v. United States,* 740 F.2d 766, 768 (9th Cir. 1984). Although Smith attempts to distinguish these cases as

addressing administrative exhaustion rather than tolling, the principle applies with equal force here: Federal jurisdiction does not attach to a state-court filing simply because it *could* have been filed in federal court.

**{¶ 25}** In the present case, federal jurisdiction did not attach until January 26, 2021, when the United States removed Smith's action to federal court. By that point, the one-year statute of limitations had already expired in November 2020. When federal jurisdiction finally attached, there was, quite simply, no limitations period left to toll under section 1367(d).

**{¶ 26}** Smith also argues that her action is timely under Ohio's savings statute. The savings statute, R.C. 2305.19(A), pertinently provides:

> In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff or, if the plaintiff dies and the cause of action survives, the plaintiff's representative may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later. . . .

Ohio law "unequivocally establishes that the savings statute can be used only once to refile a case." *Thomas v. Freeman*, 79 Ohio St.3d 221, 227, 1997-Ohio-395.

**{¶ 27}** The procedural sequence is clear from the complaint in the present case: Smith filed her original complaint in state court on October 23, 2020, which was removed to federal court on January 26, 2021 (Case 1). Before removal, in November 2020, the limitations period for her claims expired. Smith filed a second action in federal court on September 3, 2021 (Case 2). Case 1, the original case, was dismissed on January 3, 2022. Case 2 was dismissed on June 20, 2023, and less than a month later, on July 13, 2023, Smith filed the present third action.

**{¶ 28}** When Smith filed Case 2, the first case had not yet "fail[ed] otherwise than

- 10 -

upon the merits," R.C. 2305.19(A). That did not occur until Case 1 was dismissed four months later. It was when Case 1 was dismissed that the savings statute was actually triggered. So it would seem that Case 2 could not have been filed under the savings statute. We need not resolve this matter, though, because regardless, Smith cannot file the action a third time. Even if Case 2 were not filed under the savings statute, the time for refiling the case under the savings statute expired one year after Case 1 was dismissed, *see id.*, which means that Smith needed to refile the case, at the latest, by January 3, 2023. Because she refiled the present action after that date, this action is plainly untimely.

{¶ 29} The procedural circumstances presented in this case are like those addressed by the Sixth District Court of Appeals in *Rebel Underwood v. Mercy Health Physicians N., LLC*, 2022-Ohio-4313 (6th Dist.). In that case, the court considered whether 28 U.S.C. 1367(d)—the federal supplemental jurisdiction statute's tolling provision—permitted refiling state-law claims in state court after federal dismissal, when the original limitations period had expired before the federal filing and the plaintiff had already used the savings statute. The case arose after David Underwood died allegedly due to negligent care by a doctor and a nurse practitioner. His widow filed her initial state-court complaint within the limitations period but subsequently dismissed it, refiled in federal court using Ohio's saving statute, and then attempted a second refiling in state court after the federal court declined supplemental jurisdiction. The Sixth District analyzed several key issues: the nature of Ohio's saving statute (determining it was neither a limitations period nor a tolling provision); the limited applicability of prior precedent; and the implications of the Supreme Court's "stop-the-clock" interpretation of section 1367(d) in *Artis v. District of Columbia*. Ultimately, the court held that section 1367(d) applied only when the limitations periods expired while the action was pending in federal court—not

when a plaintiff had already used a savings statute to file in federal court after the original limitations period expired. "Where a plaintiff has already filed her claims once and utilizes Ohio's saving statute, R.C. 2305.19(A), to refile in federal court after the original statute of limitations has expired," said the court, "there is no 'period of limitations' to 'toll' under 28 U.S.C. 1367(d), and no 30-day grace period for refiling in state court." *Rebel Underwood* at ¶ 46.

{¶ 30} The Ninth District Court of Appeals addressed a similar question in *Vogel v. Northeast Ohio Media Group LLC*, 2020-Ohio-854 (9th Dist.). In that case, the appellate court affirmed the trial court's grant of summary judgment to the defendants on Steven Vogel's libel, defamation, and false light claims. Vogel, the former chief building official for the City of Medina, was terminated in 2013 for alleged inappropriate behavior. He claimed that the defendants subsequently published stories about his termination containing inaccurate information that damaged his reputation and hindered his employment prospects.

{¶ 31} The case centered on a procedural question regarding statutes of limitations. Vogel initially filed suit in Cuyahoga County Common Pleas Court in 2014, then voluntarily dismissed it in 2016. He subsequently filed in federal court, adding federal claims to his original state claims. After the federal court granted judgment on the pleadings for his federal claims, it declined to exercise supplemental jurisdiction over his state law claims and dismissed them. Thirty days later, Vogel filed in Medina County Common Pleas Court, where the trial court ruled his claims were time-barred.

{¶ 32} The crux of the appeal concerned the interplay between Ohio's savings statute and the supplemental jurisdiction tolling provision, 28 U.S.C. 1367(d). Vogel argued that under the Supreme Court's interpretation in *Artis v. District of Columbia*, section 1367(d) allowed him to refile his state claims within 30 days of the federal court's

dismissal. The court rejected this argument, holding that since Vogel's one-year limitations period for his defamation claims had already expired before he filed in federal court, there was no "period of limitations" left for section 1367(d) to toll. Additionally, the court noted that Ohio's savings statute can only be used once, and Vogel had already used it to file in federal court. The court acknowledged the harshness of its ruling on Vogel but maintained that courts cannot modify statutory language to provide relief not contemplated by the legislature or Congress.

{¶ 33} Smith attempts to distinguish *Rebel Underwood* and *Vogel* by arguing that these cases did not consider her novel theory that section 1367(d) applies from the moment a claim is filed in state court. But this distinction is inapposite. Even if we were to credit Smith's theory (which, as explained above, we do not), the operation of Ohio's savings statute remains dispositive.

{¶ 34} Smith contends that her interpretation of section 1367(d) is necessary to prevent the "Kafkaesque" result of plaintiffs losing their claims due to unexpected removals under the FSHCAA. We acknowledge the procedural complexities in this context. *See Bray*, 97 F.4th at 418 (observing that "provisions in the Federally Supported Health Centers Assistance Act (FSHCAA) and Federal Tort Claims Act (FTCA) can trap unwary litigants") (Thapar, J., concurring). But such policy concerns cannot override section 1367(d)'s text or established jurisdictional principles. While legitimate procedural pathways might exist to preserve meritorious claims, they do not include a judicial rewriting of section 1367(d) to expand its scope beyond its intended purpose.

{¶ 35} Section 1367(d)'s tolling mechanism operates only during the pendency of claims in federal court. It does not retroactively suspend state limitations periods for the time claims were pending in state court before removal. Because federal jurisdiction did not attach until after the limitations period expired, and because Smith had lost her

opportunity to use Ohio's savings statute, the trial court properly dismissed her claims.

{¶ 36} The first assignment of error is overruled.

### B. Does the relation-back doctrine apply?

{¶ 37} The second assignment of error alleges:

THE TRIAL COURT ERRED BY DISMISSING CLAIMS AND ORDERING JUDGMENT ON THE PLEADINGS BECAUSE OHIO'S SAVINGS STATUTE COULD ONLY HAVE APPLIED FOR THE FIRST TIME IN THIS PROCEEDING AND UNDER THE DOCTRINE OF RELATION BACK.

{¶ 38} Smith's alternative argument, in the second assignment of error, is that her second amended complaint in Case 2—which added back the state defendants—relates back to her original complaint in Case 1 under the relation-back provisions of Civ.R. 15(C) and Fed.R.Civ.P. 15(c). On this theory, the first failure otherwise than on the merits for purposes of the savings statute occurred when the federal court dismissed Case 2. And because she filed the present action within one year from that dismissal, this action would be timely. *See* R.C. 2305.19(A).

{¶ 39} The relation-back doctrine serves a specific and limited procedural purpose. Civ.R. 15(C) provides that an amendment relates back to the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." When the amendment changes the party against whom a claim is asserted, relation back further requires that the new party received sufficient notice of the action to avoid prejudice in defending on the merits, and knew or should have known that, absent a mistake concerning the proper party's identity, the action would have been brought against them.

{¶ 40} Smith's invocation of the relation-back doctrine misapprehends its scope and purpose. The doctrine permits amendments to an existing complaint; it does not resurrect previously dismissed actions or connect separate lawsuits across different

courts and dockets. As the Tenth District has aptly noted, "Civ.R. 15(C) does not apply to relate an amended complaint back to a complaint that was dismissed." (Citation omitted.) *Finley v. Miami Univ.*, 2022-Ohio-3066, ¶ 18 (10th Dist.). This principle flows logically from the text and structure of the rule itself, which contemplates amendments within a single, ongoing action.

{¶ 41} This conclusion follows from the legal effect of a dismissal without prejudice. As the Ohio Supreme Court has emphasized, "'[a] dismissal without prejudice leaves the parties as if no action had been brought at all.'" *Wilson v. Durrani*, 2020-Ohio-6827, ¶ 20, quoting *DeVille Photography, Inc. v. Bowers*, 169 Ohio St. 267, 272 (1959). Such an action "'is deemed to never have existed.'" *Id.*, quoting *Antoon v. Cleveland Clinic Found.*, 2016-Ohio-7432, ¶ 24. One cannot relate back to something that, in the eyes of the law, never existed.

{¶ 42} The same is true under Fed.R.Civ.P. 15(c), the federal relation-back provision. Federal courts have said that Fed.R.Civ.P. 15(c) governs amendments to pleadings, not the filing of new complaints. *See Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 994 (8th Cir. 1989) (rejecting the argument that a subsequent lawsuit related back to an earlier suit). As the Seventh Circuit Court of Appeals has put it, "Rule 15(c), by its terms, only applies to amended pleadings in the same action as the original, timely pleading." *Bailey v. N. Indiana Pub. Serv. Co.*, 910 F.2d 406, 413 (7th Cir. 1990). *See also Schiavone v. Fortune*, 477 U.S. 21, 29 (1986) (stating that the rule's plain language applies only to amendments stating claims that arise "out of the conduct set forth in the original pleading").

{¶ 43} Smith's theory would require us to disregard this well-established precedent by creating a novel procedural mechanism that effectively bridges separate actions across different courts. It would expand the relation-back doctrine from allowing for

corrective amendments into a sweeping exception to limitations periods. We see no basis in the text of Civ.R. 15(C) or Fed.R.Civ.P. 15(c) or the case law that would permit such an expansive interpretation. Case 1 had already been dismissed when Smith filed her second amended complaint in Case 2. The only possible relation-back was to Smith's original complaint in Case 2.

{¶ 44} The second assignment of error is overruled.

### III. Conclusion

{¶ 45} Having overruled both of the presented assignments of error, we hold that the trial court properly dismissed Smith's claims as time-barred. Therefore the trial court's judgment is affirmed.

M. POWELL AND BYRNE, JJ., concur.