[Cite as *Smith v. Mercy Health-Clermont Hosp., L.L.C.*, 2025-Ohio-4986.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| STEPHANIE SMITH, | : | |
| Appellant, | : | CASE NO. CA2024-02-010 |
| - vs - | : | OPINION AND JUDGMENT ENTRY ON RECONSIDERATION 11/3/2025 |
| | : | |
| MERCY HEALTH-CLERMONT HOSPITAL, LLC, et al., | : | |
| Appellees. | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2023 CVA 00692

Rittgers, Rittgers & Nakajima, and Lindsay A. Lawrence and Joseph W. Shea III, and Flowers & Grube, and Louis E. Grube and Kendra Davitt, for appellant.

Rendigs, Fry, Kiely & Dennis, L.L.P., and Michael P. Foley, for appellee, Mercy Health-Clermont Hospital, LLC.

Calderhead, Lockemeyer & Peschke, and Joshua F. DeBra, for appellees, EMG of Cincinnati, LTD and Samantha Yelley, D.O.

Frost Brown Todd, LLC, and Maureen A. Bickley and Kaitlyn Hawkins-Yokley, for appellee, Laboratory Corporation of America Holdings.

**O P I N I O N**

**HENDRICKSON, P.J.**

{¶ 1} Appellant, Stephanie Smith, timely asked this court under App.R. 26(A) to reconsider an aspect of our May 5, 2025 decision issued in *Smith v. Mercy Health-Clermont Hosp., LLC*, 2025-Ohio-1590 (12th Dist.) ("*Smith I*"). Appellee, Mercy Health-Clermont Hospital, LLC ("Mercy Clermont"), filed a memorandum in opposition to Smith's application for reconsideration.

{¶ 2} Upon review of Smith's application for reconsideration, and Mercy Clermont's memorandum in opposition, this court grants Smith's application. The issue raised is whether the Ohio Supreme Court's decision in *McCullough v. Bennett*, 2024-Ohio-2783, issued while Smith's appeal was pending, which rejected the "one-use" limitation on Ohio's saving statute, undermines this court's holding that her medical-malpractice claims should be dismissed as time-barred.

**Facts and Procedural History**

{¶ 3} On October 26, 2019, Smith sought treatment at Mercy Health-Clermont Hospital for left knee pain. Five days later, during a follow-up visit with Dr. Roger Chang at HealthSource of Ohio, a LabCorp employee's unsuccessful blood draw attempt resulted in a hardened knot on Smith's arm that progressively worsened. Smith returned to Mercy Clermont's emergency department that same day, where Dr. Samantha Yelley diagnosed "an injury of the right brachial artery at high risk for compartment syndrome and intramuscular hematoma." Smith underwent surgical repair the following day and remained hospitalized for eight days. She alleges that negligent treatment by multiple defendants resulted in compartment syndrome and permanent functional impairment of her right arm.

{¶ 4}   A procedural journey followed. On October 23, 2020, mere days before the one-year medical malpractice statute of limitations would expire under R.C. 2305.113(A), Smith filed her initial complaint in the Clermont County Court of Common Pleas ("Case 1"), naming Mercy Clermont, LabCorp, Dr. Yelley, Emergency Medicine Physicians of Cincinnati, Ltd., HealthSource, and Dr. Chang as defendants.

{¶ 5}   The jurisdictional landscape shifted when it emerged that HealthSource qualified as a federally supported health center under the Federally Supported Health Centers Assistance Act. This designation rendered the Federal Tort Claims Act ("FTCA") Smith's exclusive remedy against HealthSource and Dr. Chang, requiring administrative exhaustion before litigation. Smith submitted the required administrative claim to the Department of Health and Human Services on October 21, 2020.

{¶ 6}   On January 26, 2021, the United States removed Case 1 to federal court and substituted itself as defendant for the HealthSource and Dr. Chang claims. By this point, the one-year statute of limitations had expired in November 2020. The United States moved to dismiss for failure to satisfy the FTCA's administrative exhaustion requirement, which had been constructively denied by April 15, 2021.

{¶ 7}   Seeking to comply with federal exhaustion requirements, Smith filed a second action in federal court on September 3, 2021 ("Case 2"), asserting identical claims against the same defendants. She contemporaneously moved to consolidate Cases 1 and 2. On September 7, 2021, Smith filed her first amended complaint in Case 2, initially limiting it to claims against only the United States.

{¶ 8}   The federal proceedings complicated matters further. At a November 17, 2021 status conference, the parties reached an agreement whereby Case 1 would be dismissed and Smith would file an amended complaint in Case 2 to reintroduce the state-court defendants. Under this agreement, Case 1 was dismissed by stipulated order on

January 3, 2022. Smith then filed her second amended complaint in Case 2 on January 14, 2022, reinstating claims against all original defendants.

{¶ 9}  Following additional litigation, Smith moved to dismiss the United States from Case 2, which the district court granted on May 1, 2023. With the federal defendant no longer a party, the court declined to exercise supplemental jurisdiction over the remaining state-law claims. On June 20, 2023, the court dismissed Case 2 "without prejudice for refiling in the state court," explaining that remand was procedurally impossible since Case 2 had originated in federal court rather than being removed from state court.

{¶ 10} On July 13, 2023, Smith filed the present action in state court, reasserting her medical-negligence claims against the state defendants. The defendants moved for dismissal, arguing that the statute of limitations had expired and that Smith had already exhausted Ohio's saving statute. Smith responded that the federal supplemental-jurisdiction statute, 28 U.S.C. 1367(d), had tolled the limitations period during the federal proceedings.

{¶ 11} The trial court granted the defendants' motions, concluding that the one-year statute of limitations had expired in November 2020, that Smith had already invoked Ohio's saving statute when filing Case 2, and that the federal tolling provision was inapplicable because the original limitations period had already lapsed before Case 1's removal to federal court.

{¶ 12} Smith appealed, and we affirmed on May 5, 2025. Her first assignment of error on appeal contended that the trial court had erred by dismissing her claims. We rejected Smith's primary supporting argument that the federal supplemental-jurisdiction statute, 28 U.S.C. 1367(d), tolled the statute of limitations from the moment her complaint containing a federal claim was filed in state court, even though that claim was not removed

to federal court until after the limitations period expired. *Smith I*, 2025-Ohio-1590, at ¶ 18.

{¶ 13} Smith's secondary argument sought the protection of Ohio's saving statute.

We rejected this argument too:

> Smith also argues that her action is timely under Ohio's savings statute. The savings statute, R.C. 2305.19(A), pertinently provides:
>
> > In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff or, if the plaintiff dies and the cause of action survives, the plaintiff's representative may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later . . .
>
> Ohio law "unequivocally establishes that the savings statute can be used only once to refile a case." *Thomas v. Freeman*, 79 Ohio St.3d 221, 227, 1997-Ohio-395, 680 N.E.2d 997.
>
> The procedural sequence is clear from the complaint in the present case: Smith filed her original complaint in state court on October 23, 2020, which was removed to federal court on January 26, 2021 (Case 1). Before removal, in November 2020, the limitations period for her claims expired. Smith filed a second action in federal court on September 3, 2021 (Case 2). Case 1, the original case, was dismissed on January 3, 2022. Case 2 was dismissed on June 20, 2023, and less than a month later, on July 13, 2023, Smith filed the present third action.
>
> When Smith filed Case 2, the first case had not yet "fail[ed] otherwise than upon the merits," R.C. 2305.19(A). That did not occur until Case 1 was dismissed four months later. It was when Case 1 was dismissed that the savings statute was actually triggered. So it would seem that Case 2 could not have been filed under the savings statute. We need not resolve this matter, though, because regardless, Smith cannot file the action a third time. Even if Case 2 were not filed under the savings statute, the time for refiling the case under the savings statute expired one year after Case 1 was dismissed, *see id.*, which means that Smith needed to refile the case, at the latest, by January 3, 2023. Because she

refiled the present action after that date, this action is plainly untimely.

*Id.* at ¶ 26-28.

{¶ 14} Smith's application for reconsideration followed, citing the intervening authority of *McCullough v. Bennett*, 2024-Ohio-2783. The Ohio Supreme Court in *McCullough* definitively rejected the one-use limitation that had emerged from dicta in *Thomas v. Freeman*. The Court held that "the plain terms of the saving statute" control, permitting refiling when a plaintiff "commence[s] a new action within one year after the date of . . . the plaintiff's failure otherwise than upon the merits." *McCullough* at ¶ 14. Our *Smith I* decision cited the discredited *Thomas* dicta and Smith's application for reconsideration properly brings this error to our attention.

**The *Mccullough* Decision**

{¶ 15} *McCullough* involved a personal injury plaintiff who filed three complaints: the first two within the statute of limitations (both dismissed without prejudice) and a third after the limitations period expired but within one year of the second dismissal. The defendant argued that *Thomas* established a one-use restriction preventing multiple invocations of the saving statute.

{¶ 16} The Ohio Supreme Court firmly rejected this argument. The Court noted that the *Thomas* dicta was unreasoned, never formally adopted, and dealt with a different version of the saving statute, which had been amended in 2004. Most significantly, the Court declared it would not "go beyond the language of the saving statute and impose a 'one-use' limitation." *McCullough*, 2024-Ohio-2783, at ¶ 2. The Court emphasized strict adherence to statutory text rather than judicially created restrictions. The Court distinguished concerns about indefinite extensions, noting this case involved only "a single refiling after the expiration of the limitations period" and that existing Civil Rules

already protect against abusive conduct through the double-dismissal rule and courts' authority to specify dismissals with prejudice. *Id*. at ¶ 20-22.

{¶ 17} *McCullough* established that the saving statute's protections are available whenever its plain language requirements are met, regardless of previous filings or dismissals, effectively overruling lower court decisions imposing the "one-use" restriction and mandating adherence to the statute's remedial purpose of providing "an adjudication on the merits." *Id.* at ¶ 11.

### The Narrow Reading Of *Mccullough*

{¶ 18} The Eighth District Court of Appeals has adopted a narrow reading of *McCullough*. The appellate court treats *McCullough* as limited to its specific factual circumstances and concludes that the decision's rejection of the *Thomas* dicta does not necessarily eliminate all principled limitations on saving-statute applications.

{¶ 19} While *McCullough* definitively rejected judicial restrictions on Ohio's saving statute, the Supreme Court emphasized that it confronted only "a single refiling after the expiration of the limitations period" and explicitly distinguished cases involving attempts to "indefinitely extend the statute of limitations." *McCullough*, 2024-Ohio-2783, at ¶ 20. The Court underscored that McCullough had filed his second complaint before the limitations period expired and his third complaint within a year of the second complaint's dismissal, suggesting these temporal facts were central to its analysis.

{¶ 20} Building on this foundation, the Eighth District has established a distinction between single and multiple post-expiration refilings. In *Battaglia v. Donegan*, 2024-Ohio-6022 (8th Dist.), and *Gilles v. Donegan*, 2024-Ohio-6023 (8th Dist.), the appellate court held that multiple refilings after the statute of limitations has expired constitute "an attempt to evade or extend the statute of limitations." *Battaglia* at ¶ 36. The court emphasized that *McCullough* "appears to be limited to a single refiling of a complaint after the expiration

of the statute of limitations and does not encompass situations where the statute of limitations could be indefinitely extended." *Gilles* at ¶ 34.

{¶ 21} Most recently, in *Pincus v. Pincus*, 2025-Ohio-1826, ¶ 21-22 (8th Dist.), the Eighth District refined this framework further. The court held that for first refilings after limitations-period expiration, the saving statute protects all claims from the original timely complaint. But for second post-expiration refilings, the saving statute protects only those claims that were themselves timely when the second complaint was filed, not claims already time-barred at that point. This approach allows multiple uses of the saving statute consistent with *McCullough*'s rejection of a "one-use restriction," while preventing plaintiffs from resurrecting claims that had already expired. The Eighth District's interpretation thus limits *McCullough* within certain temporal boundaries tied to the Supreme Court's own limiting language and policy concerns about indefinite extensions of statutory deadlines.

## A Broader Reading Of *Mccullough*

{¶ 22} We think that *McCullough* should be read more broadly than the Eighth District has read it. We do not think that the Ohio Supreme Court's decision should be artificially constrained by its specific factual pattern. The Court's emphasis on the "plain terms" of the saving statute and its categorical rejection of judicial restrictions supports a broader application.

{¶ 23} *McCullough*'s central holding rests on statutory-interpretation principles that transcend the specific facts before the Court. The Supreme Court declared that courts should not "go beyond the language of the saving statute and impose a 'one-use' limitation," emphasizing adherence to the statute's plain text. *McCullough*, 2024-Ohio-2783, at ¶ 2. This textual-supremacy principle could apply equally to any judicial restriction or any other court-created limitation not found in the statutory language.

{¶ 24} The Court's criticism of the *Thomas* dicta was not limited to its numerical restriction but extended to the fact that it created judicial limitations without textual support. The Court noted that *Thomas* "did not include any analysis—textual or otherwise—to explain this one-line remark." *Id.* at ¶ 17. This criticism could apply with equal force to any subsequent attempt to impose factual limitations not grounded in the statute's text.

{¶ 25} *McCullough* specifically noted that "the Civil Rules already provide protections against abusive conduct by plaintiffs to indefinitely extend a statute-of-limitations period." *Id*. at ¶ 21. The Court identified the double-dismissal rule under Civ.R. 41(A)(1) and trial courts' authority to specify dismissals with prejudice under Civ.R. 41(A)(2) as sufficient safeguards against abuse. This analysis suggests that courts need not create additional temporal restrictions because adequate protections already exist within the procedural framework. The Court's reliance on existing Civil Rules protections implies that case-by-case analysis, rather than categorical rules based on refiling frequency, provides the appropriate mechanism for preventing abuse. If the Civil Rules adequately address concerns about indefinite extension, then judicial creation of factual limitations becomes unnecessary.

{¶ 26} Arguably, the Supreme Court's observation that *McCullough* involved "a single refiling after the expiration of the limitations period," *McCullough*, 2024-Ohio-2783, at ¶ 21, appears to be descriptive rather than prescriptive. The Court made this factual observation in the context of distinguishing legitimate concerns about indefinite extension from the case before it, not in establishing a new legal rule limiting the saving statute's application.

{¶ 27} *McCullough*'s approach, examining the plain statutory language rather than creating factual tests, suggests that the number of post-expiration refilings should not

determine the saving statute's availability. The Court did not establish a numerical threshold or suggest that multiple refilings inherently constitute abuse. Instead, it emphasized that each application should be evaluated based on whether the statutory requirements are met and whether existing procedural protections adequately address any concerns about abuse. While policy concerns about indefinite extension remain valid, we think that *McCullough* should be understood to establish that such concerns cannot justify judicial restrictions not found in the statutory text. The Court acknowledged these policy considerations but resolved them through reference to existing procedural protections rather than creating new limitations on the saving statute's application. The Court's approach suggests that policy concerns should be addressed through the legislative process or application of existing procedural rules, not through judicial creation of factual restrictions. Courts must apply the statute as written, with policy considerations addressed through the mechanisms the legislature and rules drafters have already provided.

### Case 2's Independent Untimeliness

{¶ 28} Nevertheless, even under our broader reading of *McCullough*, Smith's claims fail because Case 2 was independently untimely when it was filed.

{¶ 29} The relevant timeline establishes the foundation for our analysis: Smith filed her original complaint in state court on October 23, 2020, within the one-year limitations period. The limitations period expired in November 2020. Case 1 was removed to federal court on January 26, 2021, after the limitations period had expired. Smith filed a second action in federal court, Case 2, on September 3, 2021, well outside the original limitations period. Case 1 was dismissed by stipulated order on January 3, 2022, constituting a failure otherwise than upon the merits. Case 2 was dismissed without prejudice on June 20, 2023, and Smith filed the present action, Case 3, on July 13, 2023.

{¶ 30} The saving statute pertinently provides that a plaintiff may "commence a new action within one year after the date of . . . the plaintiff's failure otherwise than upon the merits." R.C. 2305.19(A). When Smith filed Case 2 on September 3, 2021, Case 1 had not yet been dismissed and therefore had not yet "failed otherwise than upon the merits." The statutory language contemplates that the failure must precede or coincide with the refiling, not occur months later. The statute's plain language requires a completed "failure otherwise than upon the merits" before the one-year refiling period begins. Smith cannot invoke the saving statute's protection for a dismissal that had not yet occurred.

{¶ 31} Smith argues that Case 2 should be deemed timely because it was filed within what would eventually become the one-year saving statute period. But this interpretation would require courts to engage in retrospective validation of complaints based on events that had not yet occurred when the complaints were filed. Such an approach lacks support in the statute's plain language and would create uncertainty about the validity of complaints pending future dismissals.

{¶ 32} Because Case 2 was untimely when filed, it cannot serve as a proper predicate for invoking the saving statute to protect Case 3. Smith's argument that Case 2's June 2023 dismissal triggered a fresh one-year period fails based on this fundamental flaw. An untimely complaint cannot be transformed into a timely one through the subsequent dismissal of a separate case. *McCullough*'s emphasis on "plain terms" reinforces this conclusion. The Ohio Supreme Court rejected judicial interpretations that departed from the statutory text, observing that courts should not "go beyond the language of the saving statute." *McCullough*, 2024-Ohio-2783, at ¶ 2. The statute's temporal requirements are unambiguous: the failure must precede the refiling. The saving statute simply does not allow for a prematurely commenced new action. (Unlike, for example, App.R. 4[C]'s allowance for a prematurely filed notice of appeal.).

{¶ 33} Because Case 2 was not filed under the protection of the saving statute, it was untimely when filed. The limitations period had expired in November 2020, more than ten months before Case 2's September 2021 filing. Case 2 asserted "identical claims against the same defendants" as Case 1, and it could not relate back to Case 1's filing date. *See Wilson v. Durrani*, 2020-Ohio-6827, ¶ 28 ("there is no need for the refiled complaint to relate back" because the saving statute itself permits refiling beyond the limitations period).

{¶ 34} Smith's present action fails because it was not filed within one year of any proper predicate dismissal. Case 1's dismissal on January 3, 2022, provided a valid basis for invoking the saving statute, but Smith's July 13, 2023 Case 3 filing occurred well after the January 3, 2023 one-year deadline.

{¶ 35} In sum, Smith argues that Case 2's June 2023 dismissal triggered a new one-year period, but this reasoning fails because Case 2 was itself untimely. An untimely case cannot serve as the foundation for a subsequent saving-statute application.

**Federal Tolling Provisions Do Not Apply**

{¶ 36} Our original analysis of 28 U.S.C. 1367(d) in *Smith I* remains sound and is unaffected by *McCullough*. The federal supplemental jurisdiction statute cannot toll a limitations period that had already expired before the case was filed in federal court. As we explained in our initial decision, "when federal jurisdiction finally attached, there was, quite simply, no limitations period left to toll." *Smith I*, 2025-Ohio-1590, ¶ 25. This principle applies regardless of *McCullough*'s saving-statute analysis.

**Conclusion**

{¶ 37} *McCullough* rejected the *Thomas* dicta cited in this court's initial decision in the present case. Accordingly, the citation to *Thomas* in our original decision, *see id.* at ¶ 26, should not be relied on as authoritative.

{¶ 38} *McCullough*'s holding, though, does not compel a different result here. The independent untimeliness of Case 2 provides a ground for affirmance that is unaffected by the Ohio Supreme Court's decision. The analysis under the correct legal framework yields the same result: Smith's claims are time-barred. Therefore, because we still find no reversible error in the trial court's decision, Smith's first assignment of error is again overruled, and our May 5, 2025 judgment is confirmed.

{¶ 39} The trial court's judgment is affirmed.

M. POWELL AND BYRNE, JJ., concur.

---

# J U D G M E N T   E N T R Y

The above cause is before the court pursuant to an application for reconsideration filed by appellant, Stephanie Smith.

For the reasons stated in the above opinion on reconsideration, the application for reconsideration is GRANTED. Upon reconsideration, the court's May 5, 2025 judgment is CONFIRMED.

Costs to be taxed to appellant.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Mike Powell, Judge

/s/ Matthew R. Byrne, Judge